



**FILED**

Jun 16 2025, 9:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

H.W.,

*Appellant*

v.

M.R.,

*Appellee*

---

June 16, 2025

Court of Appeals Case No.
25A-PO-16

Appeal from the Scott Circuit Court

The Honorable Alison T. Frazier, Magistrate

Trial Court Cause No.
72C01-2407-PO-123

---

**Opinion by Judge Brown**
Judges Bailey and Weissmann concur.

**Brown, Judge.**

[1] H.W. appeals from the trial court's order of protection issued in favor of M.R. and claims the court clearly erred because the evidence is insufficient to support the order. We agree and reverse.

**Facts and Procedural History**

[2] H.R. is the father of M.R. H.W. is H.R.'s thirty-one-year-old girlfriend. On July 12, 2024, then twenty-four-year-old M.R. filed a petition for protective order against H.W. alleging that she had committed "repeated acts of harassment." Appellant's Appendix Volume II at 11.[1] Specifically, M.R. alleged that, on or about July 10, 2024, H.W. was "sharing my personal information from my cell phone with people, and she shouldn't have." *Id.* at 12.[2] M.R. also alleged that, on or about July 9, 2024, H.W. "called Law Enforcement to come to my boyfriend's home for no reasons." *Id.* M.R. alleged that due to these acts, H.W. had "placed [M.R.] in fear of physical harm." *Id.* M.R. requested an order of protection to prohibit H.W. "from committing, or threatening to commit, acts of domestic or family violence,

---

[1] M.R. also filed a petition for protective order against her father, H.R. The trial court granted that petition, and we reversed that ruling by published opinion in *H.R. v. M.R.* (filed May 30, 2025) Ind. App. No. 25A-PO-17.

[2] The record indicates that H.W. and H.R. were in possession of M.R.'s cell phone, which was owned by H.R., during the majority of June and July 2024 while M.R. was in an inpatient alcohol treatment program.

stalking" against M.R. or her daughter, and "from harassing, annoying, telephoning, contacting, or directly or indirectly communicating" with her. *Id.*

[3] On August 19, 2024, H.W. filed a Verified Motion to Dismiss Protective Order as a Matter of Law. She alleged that neither of M.R.'s allegations met the requirement for harassment. Regarding the first alleged incident, H.W. noted that the phone referenced by M.R. "is owned by Respondent's partner (the Petitioner's father) and the 'personal' information is ambiguous." *Id.* at 23-24. Regarding the second alleged incident, H.W. noted that she and H.R. "are very concerned about [M.R.'s] excessive drug and alcohol use so much that they petitioned for guardianship of [M.R.]." *Id.* at 24. H.W. denied calling the police on M.R.'s boyfriend but admitted that she "did call law enforcement to request his address as this was pertinent for the guardianship matter." *Id.* H.W. argued that neither of the alleged incidents "indicate harassment and repeated impermissible conduct." *Id.* (emphasis omitted). On the same date, H.W. filed a Motion for the Court to Take Judicial Notice of the guardianship proceedings under cause number 72C01-2407-GU-42. The court denied the motion to dismiss on August 20, 2024. On November 6, 2024, H.W. filed another motion to dismiss pursuant to Ind. Trial Rule 12(B)(6).

[4] The court held an evidentiary hearing on November 8, 2024. At the outset, the court denied H.W.'s second motion to dismiss. M.R. then testified about her allegations of harassment against H.W. M.R. stated that H.W. had been with her father, H.R., for "close to three years," and that her relationship with H.W. started out "okay" but then "kinda slowly went downhill." Transcript Volume

II at 8-9. M.R. surmised that the problems in her relationship with H.W. stemmed from H.W.'s "jealousy" due to their "closeness in age." *Id*. at 9. M.R. recounted that her mother received "text messages" from H.R.'s ex-fiancée who had received them from H.W. *Id*. at 13. M.R. stated that H.W. had shared with H.R.'s ex-fiancée a screenshot of a video her father had taken of her holding a firearm while she was "visibly distraught." *Id*. at 14.[3] She testified that she felt "sad" and "confused" when she found out the screenshot had been shared. *Id*. at 15. M.R. also stated that, in September, H.W. had sent a friend request on Facebook to M.R.'s "current boyfriend." *Id.*

[5] M.R.'s mother testified that she received text messages from H.R.'s ex-fiancée, which included a picture of M.R. holding a firearm and also pictures of "little shooter bottles" in M.R.'s possession. *Id*. at 22. She stated that the pictures purportedly came from H.W. M.R.'s mother also stated that when she was leaving court with M.R. after H.R.'s petition for "guardianship was not granted," H.W. started "yelling at us." *Id*. at 27. M.R.'s mother further stated that after H.R. had filed for guardianship of M.R., M.R. called her and told her that H.W. was "trying to get [M.R.'s new boyfriend's] address and she was scared that they were coming there to get her[.]" *Id*. at 30.

---

[3] The record reveals that during the relevant time-period, M.R. struggled with alcohol abuse and that the video was taken after H.R. had just retrieved M.R. from an alcohol treatment center. Shortly after the above-mentioned video was taken, H.R. called the police and M.R. was transported to the hospital. M.R. and her daughter subsequently began residing with H.R. and, with H.R.'s help, M.R. entered another alcohol treatment center in June of 2024.

[6] H.W. testified that, as of the date of the evidentiary hearing, she had not had any contact with M.R. for around nine months. She explained that her intention "in sending that screenshot of M.R. holding a firearm" was to show that M.R. was a "danger to herself" and to clear up what she believed was a lie M.R. had told H.R.'s ex-fiancée regarding why H.R. was seeking guardianship. *Id*. at 40.[4] H.W. admitted that she did call "an apartment complex" to obtain a physical address for M.R. so that she and H.R. could "get proper service on M.R." for the guardianship paperwork. *Id*. at 42.

[7] On December 6, 2024, the trial court issued its findings of fact, conclusions thereon, and order granting M.R.'s request for a protective order. In relevant part, the court found that H.W.'s "actions in viewing and sharing highly personal and sensitive images of and about [M.R.] with other people, accessing and viewing [M.R.'s] private Facebook messages, contacting others in an attempt to locate [M.R.], and assisting [H.R.] in his pursuit of guardianship [of M.R.] amounts to repeated or continuing impermissible contact directed at [M.R.]." Appellant's Appendix Volume II at 52. The court found that H.W.'s "repeated intrusions into [M.R.'s] very personal and private affairs would cause a reasonable person to suffer emotional distress and actually caused [M.R.] to suffer emotional distress." *Id.* The court concluded that the evidence supported a finding that H.W. had committed "repeated acts of harassment" against M.R.

---

[4] H.W. denied purposefully accessing M.R.'s Facebook account and stated that she learned of M.R.'s alleged lie to H.R.'s ex-fiancée when she saw M.R.'s private Facebook messages "come across on the lock screen" of M.R.'s cell phone that H.R. owned and possessed at the time. Transcript Volume II at 35.

entitling her "to an order of protection in accordance with the Indiana Civil Order Protection Act and I.C. 34-26-5-2." *Id.* Accordingly, the court granted an order of protection in favor of M.R. and against H.W. for a period of one year.

## Discussion

[8] H.W. argues that the trial court erred in granting M.R.'s petition for a protective order because "M.R. failed to establish that [she] posed a credible threat of physical harm." Appellant's Brief at 13. H.W. further asserts that the trial court erred in finding that she harassed M.R. because her "involvement with third party matters—viewing and sharing images, accessing messages, and helping H.R. with a guardianship" did not constitute "impermissible contact." *Id*. at 18.

[9] Before addressing H.W.'s arguments, we note that M.R. did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes prima facie error. *Bixler v. Delano*, 185 N.E.3d 875, 877-878 (Ind. Ct. App. 2022) (*citing Zoller v. Zoller*, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006)). Prima facie is defined as "at first sight, on first appearance, or on the face of it." *Id*. (quoting *Graziani v. D & R Const.*, 39 N.E.3d 688, 690 (Ind. Ct. App. 2015)). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the

appellee. *Id.* (citing *Wright v. Wright*, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002)).

[10] As this case involves the issuance of a protective order, we begin by noting we are mindful that in 2023, the Indiana Supreme Court observed, "[t]hree years ago, we recognized that domestic and family violence is 'a public-health crisis that harms both the victim and those within the victim's household.' Since that decision, the crisis in Indiana has—unfortunately—only intensified." *S.D. v. G.D.*, 211 N.E.3d 494, 495 (Ind. 2023) (quoting *S.H. v. D.W.*, 139 N.E.3d 214, 216 (Ind. 2020)).

[11] "When reviewing a petition for a protective order, our trial courts are directed by Indiana's Civil Protection Order Act." *Id.* The Act, enacted in 2002, has the express purpose of promoting the: "(1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; (2) protection and safety of all victims of harassment in a fair, prompt, and effective manner; and (3) prevention of future domestic violence, family violence, and harassment." Ind. Code § 34-26-5-1. The Act provides, in pertinent part:

> (a) A person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a:
>
> > (1) family or household member who commits an act of domestic or family violence; or
> >
> > (2) person who has committed stalking under IC 35-45-10-5 or a sex offense under IC 35-42-4 against the petitioner.

(b) A person who is or has been subjected to harassment may file a petition for an order for protection against a person who has committed repeated acts of harassment against the petitioner.

Ind. Code § 34-26-5-2.

[12] "Harassment" means "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind. Code § 35-45-10-2. "[I]mpermissible contact" includes (1) following or pursuing the victim; (2) communicating with the victim; and (3) posting on social media if the post is directed to the victim or refers directly or indirectly to the victim. Ind. Code § 35-45-10-3(a). Further, this list is nonexclusive. Ind. Code § 35-45-10-3(b).

[13] Subsection 9(h) of the Act provides, in relevant part:

A finding that domestic or family violence or harassment has occurred sufficient to justify the issuance of an order under this section means that a respondent *represents a credible threat to the safety of a petitioner or a member of a petitioner's household*. Upon a showing of domestic or family violence or harassment by a preponderance of the evidence, the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence. . . .

Ind. Code § 34-26-5-9(h) (emphasis added). "The threat posed by the respondent is viewed objectively, and the threat must be credible, meaning plausible or believable." *L.R. b/n/f H.R. v. M.H. b/n/f N.H.*, 223 N.E.3d 675, 681 (Ind. Ct. App. 2023) (citation omitted). "Thus, the petitioner must prove,

by a preponderance of the evidence, that there are reasonable grounds to believe that the respondent presently intends to harm the petitioner or the petitioner's family." *Id*. If the petitioner meets their burden, the trial court "must issue a protective order and 'grant relief necessary to' end the violence or threat of violence." *Id*. Because "these court-ordered measures may impose significant restrictions on a respondent's freedom of movement and other rights," a court "faced with a request for protective order must balance, on the one hand, the need to protect actual and threatened victims against, on the other, the onerous burden borne by those erroneously subject to such an order." *S.H.*, 139 N.E.3d at 219.

[14] Protective orders are similar to injunctions and therefore in granting an order the trial court must make special findings of fact and conclusions thereon. *R.H. v. S.W.*, 142 N.E.3d 1010, 1014 (Ind. Ct. App. 2020). We apply a two-tiered standard of review: we first determine whether the evidence supports the findings, and then we determine whether the findings support the order. *Id*. In making these determinations, we neither reweigh the evidence nor determine the credibility of witnesses, and we consider only the evidence favorable to the trial court's decision. *T.M. v. T.M.*, 188 N.E.3d 42, 44 (Ind. Ct. App. 2022), *trans. denied*.

[15] Turning first to the trial court's finding that H.W. committed harassment based upon repeated or continuing impermissible contact, our thorough review of the record reveals that the evidence does not support that finding. Although the definition of harassment is somewhat broad, the type of impermissible contact

contemplated by our statutory law is more narrow and includes things such as following or pursuing the victim, communicating with the victim, and posting on social media if the post is directed to the victim or refers directly or indirectly to the victim. *See* Ind. Code § 35-45-10-3(a). While we acknowledge that this list is nonexclusive, we must agree with H.W. that her limited and noncontinuing involvement with third-party matters—viewing and sharing images, accessing messages, and helping her partner H.R. with the guardianship proceedings—are not the type of repeated or direct acts that constitute impermissible contact.

[16] Moreover, even assuming the evidence supported a finding that H.W.'s actions toward M.R. constituted harassment, neither the evidence nor the trial court's findings support the issuance of an order of protection. As noted, to justify the issuance of an order for protection, the harassment must objectively include a present and credible threat. *S.H.*, 139 N.E.3d at 220. Although M.R. provided testimony as to her subjective feelings of emotional distress caused by H.W.'s actions, her testimony did not include any statement that she is, or ever has been, in fear of actual harm. The trial court focused heavily on her claims that H.W. made her feel upset, humiliated, embarrassed, and frightened, but the court failed to link M.R.'s claims to any objective evidence, as there was none, to support a finding that H.W. represents a present and credible threat to M.R.'s safety.

[17] While we observe that the Indiana Supreme Court has instructed that "[i]n close cases . . . when the evidence could lead a court to grant or deny a petition

. . . the trial court is the one to make that call[,]" *S.D.*, 211 N.E.3d at 498 (quoting *S.D. v. G.D.*, 195 N.E.3d 406, 411 (Ind. Ct. App. 2022) (Altice, J., dissenting), *trans. granted*, *opinion vacated*), the current case is not one we would describe as particularly close. Rather, the record contains no evidence that H.W. ever harmed or threatened to harm M.R. or that she represents a present credible threat to her safety, as the Act requires. In short, the Act does not provide relief when no present credible threat to the petitioner's safety exists. As this Court has observed, "not all emotional distress is equivalent to the sort of terror and fear of violence that justifies an injunction against another person's behavior." *L.R.*, 223 N.E.3d at 682 (reversing issuance of protective order because there was no evidence respondent placed petitioner in fear of physical harm). Because the record is devoid of the necessary evidence, our review leaves us firmly convinced that a mistake has been made, and we conclude that H.W. has met her burden to establish prima facie error.

For the foregoing reasons, we reverse the trial court's order of protection.

Reversed.

Bailey, J., and Weissmann, J. concur.

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Ciyou & Associates, P.C.
Indianapolis, Indiana

Anne M. Lowe
Fugate Gangstad Lowe, LLC
Carmel, Indiana